**MILES CONSTRUCTION CORPORATION, Appellant,**

v.

**Helen H. DEMPSTER et al., Appellees.**

No. 18642.

United States Court of Appeals
Ninth Circuit.

Feb. 5, 1964.

Forster, Gemmill & Farmer, and John Gemmill, Los Angeles, Cal., for appellant.

Anderson, McPharlin & Conners, and Luther Jensen, Los Angeles, Cal., for appellee Great American Ins. Co.

James A. Poore, Jr., Los Angeles, Cal., for appellee Truman Browne.

Boyle, Atwill, Meyer & Stearns, Pasadena, Cal., for appellee Helen H. Dempster, etc.

John M. Sherman, Santa Ana, Cal., for appellee William J. Padden.

Before CHAMBERS and HAMLEY, Circuit Judges, and JAMESON, District Judge.

HAMLEY, Circuit Judge.

In question here is the amount of compensation Miles Construction Corporation (Miles) obligated itself to pay A. T. Locke for services rendered in preparing a construction contract bid, and the interest due thereon. The assignees and claimants of Locke contend that the compensation due and unpaid is $135,000, with interest thereon from June 13, 1960 to April 26, 1962. Miles asserts that the compensation due and unpaid is $85,000, and that no interest is due.

After a trial to the court without a jury, judgment was entered for the assignees and claimants of Locke in the full amount claimed by them. Miles appeals.

On October 8, 1956, Locke entered into a written agreement with Miles, whereby Locke contracted to perform certain services for the company in preparing construction contract bids for use by Miles.[1] The bids in question were with reference to several military housing projects under the Capehart Act,[2] at Little Rock, Arkansas, and other locations. The agreement required that Locke go to Little Rock and, at his own cost and expense, prepare a bid for submission by Miles on October 11, 1956. If Miles submitted a bid, and if it was successful, Locke was to receive $15,000.

The agreement provided further that Locke was to be additionally compensated, provided that Miles realized certain minimum percentages of net return from the Little Rock project. This provision, contained in paragraph 11 of the agreement, reads as follows:

"Miles shall pay to Locke the sum of $100,000 if, but only if, the 'net return', as said term is hereinafter defined, to Miles, resulting from the bidding, entering into, and performance by Miles * * * is at least three per cent (3%), but less than

---

1. The agreement was amended by the parties on December 27, 1956.

2. The Capehart Housing Act, 69 Stat. 646, as amended 12 U.S.C. §§ 1748a–1748g, is Title VIII of the National Housing Act.

six per cent (6%) of the total amount of the Contract between Miles and the United States Government; or, if, but only if, the said 'net return' to Miles is six per cent (6%) or more, of the said Contract amount, Miles shall pay to Locke the sum of $150,000.00. Provided, however, that there shall be deducted from any sum payable under this paragraph any amount which Miles shall have theretofore paid to Locke on account of bidding expense, or otherwise."

The term "net return," as used in paragraph 11, is defined in paragraph 12 of the agreement, as amended December 27, 1956, as follows:

" * * * the amount by which the total receipts of Miles under the said Contract exceed the aggregate of the cost of all labor, materials, and services expended or incurred in bidding the said Project, performing all acts necessary or appropriate to accomplish the construction, and closing * * *, actual construction, financing costs and expenses, and any and all other costs, expenses, charges, fees, taxes * * * deposits, bond premiums, and traveling and other expenses of any nature whatsoever expended or incurred in connection with such Project * * *."

Locke performed the services required of him under this agreement. Miles submitted a bid on the Little Rock project, and it was declared to be the lowest acceptable bid. The company thereupon paid to Locke and his then assignee the initial $15,000 due under the agreement referred to above. Miles entered into the construction of the project and continued with it to its completion on May 13, 1960. The net return exceeded three per cent, so that those who claim under Locke are concededly entitled to at least $100,000 compensation, $15,000 of which has already been paid.

If that $100,000 is regarded as a cost to be taken into account in computing net return, the company's net return on this construction project was 5.57%, thereby falling short of the six per cent return which would raise the compensation to $150,000. But if that $100,000 compensation concededly due is not to be taken into account in computing net return, the latter would equal or exceed six per cent, thereby entitling those claiming under Locke to $150,000 compensation less the $15,000 already paid.

The trial court held that the $100,000 concededly earned is not to be taken into account in computing net return and so concluded that such return equalled or exceeded six per cent. This determination was based on the court's construction of paragraphs 11 and 12 of the agreement quoted above, without resort to extrinsic evidence, it being held that the contract is not ambiguous.

Miles, at the trial, and in this court, agrees that the contract is free from ambiguity, but finds the "plain meaning" of the language to be different from the "plain meaning" the trial court extracted therefrom. The company places emphasis upon the "if, but only if" language of paragraph 11. It further argues that paragraph 12 of the agreement was obviously intended to contain an all-inclusive definition of "costs," that among the costs specifically included therein was the cost of " * * * all * * * services * * * incurred in bidding the said Project * * * " and that the expense incurred by Miles with reference to the $100,000 compensation concededly earned was a cost of service incurred in bidding the project.

This interpretation of the contract may seem simple and clear cut on first consideration. But when an attempt is made to apply it in a particular case, difficulties immediately appear. The complexity of the computation formula which results is best demonstrated by appellant's own suggested method, quoted in the margin, of determining the

compensation payable.[3]   Absurd results could also flow from this method of computation, as suggested by appellees.[4]

In our opinion the mistake appellant makes is in assuming that, under paragraph 11 of the agreement, percentage of net return is to be computed in steps, and that "once" a net return of three per cent is found, then account must be taken of the compensation of $100,000 "then" incurred, before proceeding to compute final net return.

As we view the contract, net return, within the meaning of paragraph 12, is to be computed after all of the material figures bearing on receipts, and expenses paid or incurred are available. At that time, and before making the actual computation, it is not known what the net return will be and therefore what the compensation to Locke will be. Without regard to such compensation, then, contract expenses paid or incurred are deducted from contract receipts and the difference, representing profit, is divided by expenses paid or incurred to determine rate of return.   In normal practice such a computation is not made in two steps, but in one, and nothing in this agreement indicates that normal accounting procedures are not to prevail. If computed in one step, net return is not subject to readjustment in the manner proposed by appellant.

Since, at the time this computation is made, it is not known what compensation to Locke has been incurred, it must have been the intention of the parties that such compensation is not a cost to be considered in making the compensation.   This may seem to run counter to the all-inclusive definition of "cost" contained in paragraph 12 of the contract, but in our opinion it is the only construction of the agreement which renders it

3. Quoting from pages 34 and 35 of appellant's opening brief:
   "In the case at bar, the Agreement required that these steps and procedures be engaged in in determination of the amount payable under it:
   "1. To ascertain, under the definition in the Agreement without regard to any amount payable to Locke, the 'net return' that Miles realized.
   "2. If this is more than 3% of Contract Receipts, then it is established that Locke is entitled to additional compensation.
   "3. If the 'net return' originally arrived at shows that Miles realized a net return in excess of 3% of Contract Receipts and if after setting 3% of Contract Receipts aside to Miles there remains $100,000.00 in net return, then Locke becomes clearly entitled to $100,000.00.
   "4. At this point in the computation the cost figure must necessarily be revised because it has now been ascertained that Locke is clearly entitled to at least $100,000.00.   Therefore the cost figure initially used must be increased by $100,-000.00, and the computation must be made to ascertain whether or not this allows a net return which is more than 6%.
   "5. 'If and only if' (to use express contract language) this yields a percentage of more than 6, is Locke entitled to anything in addition to the $100,000.00 less

the $15,000.00 already paid.   The amount in excess of such $100,000.00 would depend upon the extent to which there was sufficient money to pay Miles its 6% of Contract Receipts."

4. " * * *   Thus, for example, suppose that the net return earned were such that the inclusion of the fee of $100,000.00 as a cost resulted in a net return in excess of 6%, whereas the inclusion of a fee of $150,000 as a cost resulted in a net return of less than 6%.   If the net return were in excess of 6%, the payee would be entitled to $150,000, but the inclusion of that $150,000 reduces the net return to less than 6% thereby reducing the fee to $100,000 but that in turn creates a return in excess of 6% and a fee of $150,000 and so on in an endless circle of reasoning."

Appellants reply that appellee's supposition is "speculative," but it is nevertheless entirely possible under appellant's construction of the contract.   Appellant also argues that this suggested difficulty could be overcome by reading the contract as giving Locke so much of the net return, up to $50,000, as would remain after setting aside a full six per cent return for Miles in the computation of which $100,000 compensation to Locke would be taken into consideration.   But paragraph 11 makes no provision for this. If Locke is entitled to anything more than $100,000, he is entitled to $50,000 more.

workable under any and all circumstances that reasonably could arise. It is fair to assume that the parties contemplated an agreement which was workable in this sense.

While we have examined the court decisions cited by the parties we have found none of them directly in point or even tangentially very helpful.

We conclude that the trial court did not err in granting judgment in the principal amount of $135,000.

On the question of interest we agree with appellant.

■■ The contract is silent as to interest. The rule is that, when a contract for the payment of money is silent as to interest, the law awards interest at the legal rate from the time it becomes due and payable, if such time is certain or can be made certain by calculation. Flynn v. California Casket Co., 105 Cal.App.2d 196, 233 P.2d 131. But if a claim is uncertain or unliquidated, interest is not recoverable until it is made certain and becomes liquidated by judgment or otherwise. Perry v. Magneson, 207 Cal. 617, 279 P. 650.

■ The basic question, then, is when did this claim for compensation become "due and payable"? In this connection, paragraph 11 of the agreement provides:

"Said payment shall be due on or before thirty (30) days after the date on which Miles receives final payment under the said Contract, or any additions or supplements thereto, or the date on which Miles has paid all costs and expenses incident to the performance of said Contract, or the date on which Miles has ascertained, by proper accounting procedures, the amount which would, by this Agreement, be the 'net return,' whichever is the later date."

Miles received final payment under the contract, from the Government, on May 13, 1960. The trial court held that, under paragraph 11, the payment of compensation to Locke was due thirty days thereafter, or on June 13, 1960. Interest at seven per cent was therefore allowed on $135,000 from June 13, 1960 to April 26, 1962, when Miles deposited United States Treasury bills in that sum in the registry of the court. The aggregate interest award was $17,666.34.

But while Miles received final payment under the contract, from the Government, on May 13, 1960, it did not, and could not, until considerably later pay all costs and expenses incident to the performance of the contract. Likewise, it did not and could not, until considerably later, ascertain by proper accounting procedures the amount which would under the Locke agreement, be the "net return." The reason for this is that Miles was faced with certain contingent claims and litigation growing out of the contract which prevented earlier payment of all such costs and expenses, and earlier ascertainment of the net return. It would serve no useful purpose to recount herein the several specific transactions which produced this result.

Under paragraph 11, these matters as well as the receipt of final payment under the contract had to be settled before the thirty-day period after which the Locke compensation was due would begin to run. In actuality, they were not settled until after April 26, 1962, on which date Miles deposited $135,000 in United States Treasury bills in the registry of the court. Accordingly no interest between June 13, 1960 and April 26, 1962 should have been awarded. The findings of fact which led the court to a different conclusion are clearly erroneous.

The judgment is affirmed in part and reversed in part as provided for herein. Appellant will recover its costs on this appeal.